UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
KEVIN ANTHONY KNIGHT,

Plaintiff, 26 CV 1592 (LDH) (JRC)

-against-

CITY OF NEW YORK, JASON SIMMONS, and JOHN and JANE DOES 1-4 **AMENDED COMPLAINT**

Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

The plaintiff, by his attorney, Michael Lumer, as and for his first amended complaint against the defendants, allege, upon information and belief, as follows:

**PARTIES, JURISDICTION and VENUE**

1. Plaintiff Knight, now eighteen years old, was an infant when the claims asserted herein accrued, and was an infant at the time this action was filed. He has since reached the age of majority. At all relevant times herein he has resided in Queens County, within the City and State of New York.

2. At all relevant times herein, defendant City of New York was and is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York and acts by and through its agencies, employees and agents, including, but not limited to, the New York City Police Department ("NYPD") and its employees.

3. At all relevant times herein, defendant Jason Simmons, Tax Reg. 970218, was employed by the City of New York as a member of the NYPD. Simmons is sued herein in both his official and individual capacities.

4. At all relevant times hereinafter mentioned, defendants John and Jane Does 1-4 (the "Doe defendants") were employees of the City of New York through the NYPD but whose identities are not yet known to plaintiff. The Doe defendants are sued herein in both their official and individual capacities.

5. This Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331, 1343 and 1367, and 42 U.S.C. §§ 1983 and 1988.

6. The plaintiff timely served a Notice of Claim asserting, in relevant part, that he was subjected to excessive force by the defendant City of New York and its employees and agents.

7. Plaintiff appeared for his GML 50-H examination as noticed by the City of New York..

8. At least thirty days have passed since service of plaintiff's Notice of Claim, and adjustment and payment thereof has been neglected or refused by the City of New York.

9. The plaintiff has complied with all obligations, requirements, and conditions precedent to commencing an action against New York City under New York law.

10. Venue is properly laid, pursuant to 28 U.S.C. Section 1391, et seq., in the Eastern District of New York, where the plaintiff resides and where the majority of the actions complained of herein occurred.

11. Plaintiff has complied with all of obligations, requirements and conditions precedent to commencing an action against New York City under New York law.

## FACTUAL ALLEGATIONS

12. During the afternoon hours of April 1, 2025, plaintiff was present on the sidewalk in the vicinity of 61-40 188 Street in Queens county with other individuals, each of whom is believed to have been about or under 18 years old at that time.

13. The plaintiff was sixteen (16) years old as of April 1, 2025. The plaintiff has since reached the age of majority and is now eighteen (18) years of age.

14. Simmons and two other officers arrived at the location in a police vehicle.

15. The plaintiff was sitting on a parked moped when Simmons and the other officers arrived.

16. Simmons and the other officers exited their vehicle and moved quickly towards plaintiff and his friends.

17. Without warning, and without giving the plaintiff or anyone with plaintiff an opportunity to dismount their mopeds or otherwise engage with the officers, Simmons and the other officers initiated contact with the plaintiff and at least two of the other individuals at the scene.

18. The plaintiff responded by trying to drive away but was immediately pulled off the moped and taken violently to the ground by defendant Simmons.

19. At no time did plaintiff strike or attempt to strike Simmons or any other officer before Simmons violently took the plaintiff to the ground.

20. Any contact between plaintiff's moped and Simmons was caused by and resulted from Simmons rushing towards and seizing plaintiff.

21. The force used by Simmons was excessive and objectively unnecessary.

22. Simmons' use of force was so extreme it caused plaintiff to suffer an open displaced right femoral shaft fracture. In simple terms, Simmons caused the plaintiff's right femur to fracture with such force that one end of the broken thigh bone tore through the plaintiff's skin.

23. While plaintiff was lying on the sidewalk, howling in pain, one of the Doe defendants sat squarely on plaintiff's fractured right leg and placed handcuffs on the seriously injured plaintiff, who was unarmed, immobile, and incapable of going anywhere.

24. The Doe defendant's use of force against the prone plaintiff, who was writhing on the sidewalk, plainly in great pain, was gratuitous and objectively unnecessary.

25. This interaction took place entirely on the sidewalk at the location where the defendants encountered the plaintiff.

26. Other officers, including the remaining Doe defendants, gave medical personnel various falsified explanations for plaintiff's injury. These include claims such as "[plaintiff] riding moped and crashed into a car," and other, similar factually false statements that claimed that the plaintiff's injuries resulted from his driving into or otherwise being struck by another motor vehicle while fleeing the police.

27. In actuality, plaintiff did not strike nor was he struck by any other motor vehicle. He was violently taken to the ground by Simmons, and it was this use of force that was the sole proximate cause of plaintiff's injuries.

28. The explanations provided by the Doe defendants were fabrications meant to hide Simmons' use of force from sight by falsely suggesting that it was plaintiff's operation of the moped that caused his injuries, when in actuality it was Simmons' use of force.

29. Plaintiff was taken by EMTs to Long Island Jewish Hospital, where he was admitted. The following morning, April 2, 2025, plaintiff underwent surgery, described in the operative report as "Irrigation and debridement of skin, subcutaneous tissue, muscle and bone, right femur open fracture and intramedullary fixation, right femur."

30. The pre-operative and post-operative diagnoses were the same: right grade 3 open femur fracture.

31. Plaintiff was kept handcuffed or otherwise shackled to his hospital bed throughout from his admission on April 1 though his release on April 5, 2025.

32. The defendants' efforts at disguising the cause of the injury are reflected in the "Indications" section of the operative report which states, in relevant part, that the plaintiff "Was struck by a motor vehicle after hitting several vehicles."

33. In fact, as Simmons admits in the motor vehicle accident ("MVA") report he drafted, the incident did not in any way involve any other vehicle, and certainly did not suggest plaintiff was injured by being struck by or striking any other vehicles.

34. This is not to say that Simmons' motor vehicle report was accurate. Simmons contends in the MVA report that, as he approached the plaintiff, Knight accelerated and drove his moped into Simmons' leg, causing the plaintiff to "fall off moped and complain of pain in his right leg." This narration was false. It was Simmons' use of force in tackling Knight that caused the plaintiff's injuries.

35. While the plaintiff was at the hospital for surgery, treatment, and recovery, Simmons drafted paperwork or caused such paperwork to be drafted in which he alleged that he observed Knight driving a moped on the sidewalk. He further alleged that he and other officers approached Knight and directed him to stop but Knight did not comply, and instead drove at Simmons with the front wheel lifted and struck Simmons on his leg. Simmons also alleged that Knight flailed his arms, twisted his body, and tensed up in an attempt to avoid being handcuffed and placed under arrest.

36. These allegations were false in a number of respects. First, plaintiff was not operating the moped when Simmons arrived on the scene. Second, there were no directions to stop (as Knight was not driving in the first instance). Third, Knight did not drive at Simmons with his front wheel raised, nor did he strike Simmons as claimed.

37. Perhaps the most outrageous lie told by Simmons was that the plaintiff's alleged flailing, twisting, and tensing was an effort to avoid arrest. As Simmons was well aware, he had just severely injured plaintiff's, breaking Knight's femur with such force that the one end of the broken thigh bone tore through the skin in the front of plaintiff's thigh, leaving him face down on the sidewalk screaming in pain. Simmons, or one of his

colleagues, responded by sitting on the plaintiff's mangled leg in order to rear cuff the plaintiff, who was howling in pain.

38. Simmons forwarded these false allegations to the Queens County District Attorney's office ("QDAO"), or knowingly caused them to be forwarded, in order to justify plaintiff's arrest and the force used against him.

39. To the extent that any of the individual defendants did not personally communicate these false allegations to the QDAO, they were aware that fabricated evidence had been or would be communicated to prosecutors by one of their colleagues for the purpose of initiating plaintiff's prosecution, and had ample opportunity to intervene to guard plaintiff from further harm and injury, but deliberately chose not to do so.

40. On or about April 5, 2025, the plaintiff was presented for arraignment in Queens County Criminal Court on charges of assault in the second degree (a D felony); forgery of a VIN (an E felony), and assault in the third degree, reckless endangerment in the second degree, obstructing governmental administration in the second degree, and resisting arrest (all A misdemeanors).

41. On or about April 7, 2025, the Hon. Nestor H. Diaz issued an order of removal, effectively transferring the plaintiff's criminal prosecution to Family Court under Docket D007480-25.

42. On August 19, 2025, all of the charges against the plaintiff were formally withdrawn and the case terminated in Knight's favor.

43. That at all times relevant herein, the individual defendants were acting within the scope of their employment, and their acts were done in furtherance of the City of New York's interests and without legal justification or excuse.

**FIRST CAUSE OF ACTION**

**(§1983: Excessive Force Against the Individual Defendants)**

44. Plaintiff repeats the preceding allegations as though stated fully herein.

45. Defendant Simmons willfully and intentionally seized the plaintiff, and assaulted and subjected him to excessive force, causing the plaintiff to suffer serious and permanent injuries without cause and without a reasonable basis to believe such the use of such force was objectively reasonable, and in so doing, violated the plaintiff's rights under the Fourth Amendment of the United States Constitution.

46. One of the John Doe defendants willfully and intentionally sat on plaintiff's badly mangled leg, causing plaintiff needless pain and suffering. The plaintiff was immobile at that time and there was no objectively reasonable basis for this conduct.

47. By reason thereof, defendant Simmons violated 42 U.S.C. § 1983 and caused the plaintiff to be deprived of his constitutional rights, and to suffer physical pain, and permanent physical and emotional injuries, economic damages, and mental anguish.

**SECOND CAUSE OF ACTION**

**(§1983: Fabricated Evidence/Denial of Fair Trial Against the Individual Defendants)**

48. Plaintiff repeats the preceding allegations as though stated fully herein.

49. The individual defendants willfully and intentionally subjected plaintiff to the denial of his right to a fair trial by fabricating evidence and communicating said materially false statements and/or materially misleading factual claims to the QDAO, thereby causing plaintiff to suffer a deprivation of his liberty.

50. To the extent that any one of the individual defendants did not personally engage in any of the aforementioned conduct, they witnessed this conduct or otherwise knew and understood that such fabrications would be or had been communicated to prosecutors, had ample opportunity to intervene to prevent it from occurring or continuing to occur, and failed to do so.

51. By so doing, the individual defendants subjected the plaintiff to the deprivation of his right to due process directly through the use of fabricated evidence, or through their failure to intervene in such misconduct by their fellow officers, and aided and abetted in the violation of, plaintiff's rights under the Fourth, Sixth, and/or Fourteenth Amendments of the United States Constitution.

52. By reason thereof, the individual defendants have violated 42 U.S.C. §1983 and caused plaintiff to suffer various injuries, including emotional and physical injuries, mental anguish, the deprivation of his liberty, and the loss of his constitutional rights.

## THIRD CAUSE OF ACTION

**(New York City Administrative Code §8-801 et seq.
Against the City of New York and the Individual Defendants)**

53. Plaintiff repeats the preceding allegations as though stated fully herein.

54. Each of the individual defendants is liable under New York City Administrative Code (§8-802 et seq.) for the unreasonable seizure and imprisonment of the plaintiff.

55. Each of the individual defendants is liable under New York City Administrative Code (§8-802 et seq.) for the violent and objectively unreasonable use of force against the plaintiff at and after the time of his arrest.

56. Each of the individual defendants is liable under New York City Administrative Code (§8-802 et seq.) for causing the plaintiff to be prosecuted without probable cause.

57. To the extent that any one of the individual defendants did not personally engage in any of the aforementioned conduct, they were aware that it was or would be happening, had ample opportunity to intervene to prevent it from occurring or continuing to occur, and failed to do so.

58. The City of New York, as the individual defendants' employer, is liable under §8-803 for the acts of its employees and agents, including these individual defendants.

59. By reason thereof, the municipal defendant and the individual defendants have violated §8-802 et seq., and caused each plaintiff to suffer emotional and physical injuries, mental anguish, incarceration, and the deprivation of their liberty.

**FOURTH CAUSE OF ACTION**

**(§1983: Monell Claim Against the Municipal Defendant)**

60. Plaintiff repeats the preceding allegations as though stated fully herein.

61. All of the above occurred as a direct result of the unconstitutional policies, customs or practices of the City of New York, including, without limitation, the inadequate screening, hiring, retaining, training and supervising its employees; and pursuant to customs or practices of aggressive policing and use of excessive force by members of the specialized NYPD unit, known as the Community Response Team (hereinafter "CRT").

62. The defendants' conduct directed at the plaintiff are not an isolated incident. The municipal defendant is aware from lawsuits, notices of claims, and complaints filed with the NYPD'S Internal Affairs Bureau, and the City of New York's Civilian Complaint Review Board ("CCRB") that many CRT officers, including the defendants engage in a practice of overly aggressive policing and excessive force, all of which has been sanctioned by the municipal defendant.

63. More precisely, the municipal defendant was on notice prior to April 1, 2025, defendant Simmons had a history of engaging in misconduct, including, but not limited to, unlawful and otherwise unjustified acts of violence, and submitting fabricated and falsified factual allegation to prosecutors based on events that occurred after Simmons had been hired by the NYPD. Notwithstanding such notice, the NYPD failed to take any meaningful supervisory action or otherwise reasonably respond to Simmons' conduct, covered up his further misconduct, and left Simmons in place to continue his pattern and practice of unconstitutional behavior.

64. Simmons has been the subject of numerous complaints, including those involving allegations of excessive force, over a short period of time. More specifically, for

example, Simmons had twenty-two (22) allegations filed against him with the CCRB stemming from ten different incidents between late August 2023 and early September 2024.

65. These include substantiated allegations for four allegations of abuse of authority on April 14, 2023, including the improper use of a body-worn camera and an improper vehicle stop.

66. A complaint alleging excessive force that occurred less than four weeks later on May 10, 2023, was filed with the CCRB, but was later closed to pending litigation.

67. Complaints alleging other abuses of authority or excessive force were filed with the CCRB with incident dates ranging from May 29, 2023, to August 25, 2024, were resolved with a mixture of findings, including substantiated, unfounded, and, within NYPD Guidelines.

68. The instant misconduct and police violence occurred on April 1, 2025, well after Simmons' proclivity for engaging in misconduct had been reported repeatedly to the CCRB. Notably, this incident did not lead to a CCRB investigation, which is to say, the list of CCRB allegations is incomplete, and does not account for the entire universe of complaints about Simmons' conduct as a member of the NYPD.

69. This lawsuit is not the only one filed against Simmons over the past few years. For instance, a review of PACER and NYSECF reveals at least several lawsuits filed between 2024 and 2025 alleging police misconduct by Jason Simmons. As was the case with the plaintiff in the instant action, it does not appear as though the misconduct alleged in these cases against Simmons was ever reported to the CCRB, which is further evidence that the CCRB's list

of 10 incidents resulting in 22 allegations of misconduct between late August 2023 to early September 2024, is materially incomplete.

70. For instance, on September 24, 2024, a person named Aundrey Matthews filed an action against the City of New York, Jason Simmons, and one other officer in New York County Supreme Court under Index No.: 158752/2024. alleging, in relevant part, that, on August 4, 2023, Simmons and his co-defendant forcibly pulled the plaintiff from an elevated structure and threw him to the ground. They then twisted the plaintiff's body and struck and/or kicked him in the head and body, and knelt on his head and neck, before completing his arrest and generating arrest paperwork. The New York District Attorney ("DANY") then declined to prosecute the plaintiff. This action was filed and appears to still be pending.

71. Similarly, on October 13, 2024, Antwon Fisher-Williams filed an action in Bronx County Supreme Court under Index No.: 816381/2024E, against the City of New York and Jason Simmons, alleging that on July 20, 2023, Simmons falsely arrested the plaintiff, damaged and destroyed the plaintiff's home and belongings, and filed false statements with prosecutors, causing the commencement of plaintiff's prosecution, which further resulted in his imprisonment until his case was dismissed on July 26, 2023. The civil case appears to be pending.

72. On February 14, 2025, a person named Kenneth Gonzalez filed an action in Bronx County Supreme Court under Index No.: 152069/2025, against the City of New York, Jason Simmons, and one other officer, alleging that on December 15, 2023, Simmons falsely arrested and knowingly communicated fabricated evidence to prosecutors, causing the plaintiff

to be incarcerated and prosecuted until the criminal case was dismissed. The civil case appears to still be pending.

73. On April 10, 2025, an individual named Charlie Santiago filed an action in the Southern District of New York, docketed at 25-CV-2994 (AKH), later amended on January 12, 2026, in which he alleged that Simmons and other officers, while conducting a car stop, pulled the plaintiff from the vehicle and repeatedly slammed his face on the ground and struck him in the body. Once again, the DANY declined to prosecute the plaintiff. The litigation in that case is still ongoing.

74. That Simmons, a member of the CRT throughout most, if not all of this checkered history, could generate 22 separate charges before the CCRB and at least four lawsuits unrelated to any of the CCRB allegations between 2023 and 2025 underscores the municipal defendant's awareness that Simmons is alleged to have routinely and regularly violated NYPD guidelines, New York law, and the United States Constitution in the course of business.

75. Notwithstanding the above litany of complaints concerning Simmons' propensity for violence and untruthfulness, the City of New York not only continued to employ Simmons, but in fact promoted him to detective.

76. Moreover, there were, on information and belief, no meaningful investigations into the CCRB complaints and lawsuits, and certainly no attempt by the NYPD or the City of New York to examine Zambrano's conduct more holistically. Put differently, the City was aware of Simmons' repeated use of excessive force against people incident to arrest, followed by deliberately false statements meant to justify or cover up this needless violence. Yet, upon information and belief, there was no effort to modify, increase,

supplement, or otherwise intensify Simmons' supervision, or otherwise ensure that he had not and would not engage in such blatant misconduct.

77. The City of New York's refusal to impose any discipline, to conduct any meaningful investigation, or to otherwise express even the slightest scintilla of concern that Simmons was prone to unnecessary and unjustifiable violence was a clear and unequivocal endorsement of Zambrano's misconduct that could only be understood as a ratification of his past misconduct, and an encouragement that he continue to use force in this fashion.

78. In fact, the NYPD's response to the assault on plaintiff in this case is itself compelling evidence of the City's deliberate, ongoing, and systemic efforts to cover up this sort of misconduct. More precisely, the NYPD affirmatively sought to cover up Simmons' violence against Kevin Knight by choosing not to investigate Simmons' use of force in this instance or historically, despite the severity of Knight's injuries and the obvious fact that the injury could not have occurred as Simmons claimed.

79. In this case, the NYPD was on notice immediately after the violent injury was inflicted on the plaintiff, who remained on the scene until EMTs eventually arrived.. The EMTs, in front of numerous officers, cut away the plaintiff's pants to access the wound, thus confirming that the fractured femur had broken through the skin of the plaintiff's thigh.

80. That officers later that afternoon lied to hospital personnel by falsely claiming that the plaintiff was injured in a motor vehicle accident, underscores the NYPD's

desire to cover up Simmons' use of excessive force. Put most simply, multiple police officers were aware of the severity of the injury caused by the violent takedown of the plaintiff. Their reaction was to manufacture a cover up. There is no indication that the NYPD investigated the use of force in this case, or that, if they did, that such an investigation was meant to serve any purpose other than to whitewash the incident and protect Simmons (and thus the City) from any legal consequences.

81. As a result, the NYPD willfully blinded itself to the nature and scope of the plaintiff's injuries, and deliberately avoided reviewing any independent evidence that might cast any doubt on Simmons' story, such as the cause of plaintiff's traumatic leg injury, which was itself compelling evidence of the nature of the force used by Simmons.

82. The refusal to independently investigate Simmons' use of force is further evidence of the City of New York's policy and practice of encouraging, ratifying, and tacitly endorsing excessive force and dishonesty by its officers generally, and Simmons in particular. By failing to hold its officers accountable, the City, through the NYPD, legitimizes and sanctions this behavior, and in so doing, affirms its continuing ratification of this policy.

83. Such actions by the City of New York are a reflection of the municipal defendant's repeated and untenable abdication of its responsibility to supervise and discipline its employees, and to otherwise protect the public from officers the NYPD knows are a threat to the public's safety and well being, and evince a complete disregard and deliberate indifference to the rights and welfare of those with whom these officers, and Simmons in particular, interact.

84. These actions further reflect a policy, custom, and practice, or a ratification thereof through a demonstrated failure to act to curtail such behavior, and thus the aforesaid policies, procedures, regulations, practices and/or customs of the municipal defendant were, collectively and individually, a substantial factor in bringing about the aforesaid constitutional violations by the individual defendants generally, and Zambrano in particular.

85. The City's abdication of its duty to supervise its police officers, and its tacit, if not overt, endorsement of excessive force and similar misconduct, reflects the City's deliberate indifference to the established risks that such conduct poses to the public at large.

86. The City's failure to act in the face of overwhelming evidence that Simmons was prone to excessive and unnecessary violence against civilians is evidence of its deliberate indifference to Simmons' demonstrated pattern of behavior, and the very real risk that he would continue to engage in constitutional violations, such as the assault that he eventually committed against plaintiff.

87. All of the aforementioned acts deprived plaintiff Kevin Anthony Knight of the rights, privileges and immunities guaranteed to citizens of the United States by the Fourth and Fourteenth Amendments to the Constitution of the United States of America, and in violation of 42 U.S.C. §1983.

88. By reason thereof, the municipal defendant has violated 42 U.S.C. §1983 and caused plaintiff to suffer various injuries, including emotional and physical injuries, mental anguish, the deprivation of his liberty, and the loss of his constitutional rights.

## DEMAND FOR A JURY TRIAL

Pursuant to Fed. R. Civ. P. 38, the plaintiff hereby demands a jury trial of all issues capable of being determined by a jury.

**WHEREFORE**, the plaintiff demands judgment against defendants jointly and severally as follows:

(i) actual and punitive damages against the individual defendants in an amount to be determined at trial;

(ii) actual damages in an amount to be determined at trial against the City of New York;

(iii) statutory attorney's fees pursuant to 42 U.S.C. §1988 and New York City Administrative Code §8-805, as well as the costs of the action;

(iv) injunctive relief in the form of an order issued by this Court expressly restraining each individual defendant from engaging in further conduct in violation of Administrative Code §8-802, et seq., as required under New York City Administrative Code §8-805(a)(3); and,

(v) such other relief as the Court deems just and proper.

Dated: New York, New York
May 1, 2026

LUMER LAW GROUP
Attorneys for Plaintiff Kevin Anthony Knight

Michael Lumer, Esq.
14 Wall Street, Suite 4C
New York, New York 10005
(212) 566-5060